UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARVIN MADDIX-EL #130908,

       Plaintiff,

v.                                                                  Case No. 2:14-cv-188
                                                                    HON.  JANET T. NEFF

SHAWN BRINKMAN, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Marvin Maddix-El pursuant to 42 U.S.C. § 1983.  Plaintiff asserts Eighth Amendment claims against Defendants Charles Scott RN, Shawn Brinkman, and Paul Zelenak RN.  On July 18, 2016, Defendants filed a motion for summary judgment.  (ECF No. 51.)  On November 28, 2016, the undersigned issued a Report and Recommendation granting in part and denying in part Defendants' motion for summary judgment.  (ECF No. 66.)  However, the undersigned vacated the Report and Recommendation after Defendants requested leave to file supplemental briefs.  Defendants and Plaintiff have both filed supplemental briefs.  This matter is now ready for decision.

On July 17, 2013, Plaintiff was transferred to Alger Correctional Facility (LMF). During processing, Plaintiff requested to be assigned to a lower bunk.  Plaintiff alleges that he was assigned a lower bunk medical detail at previous facilities because he has diabetes and is prone to diabetic seizures.  However, Defendant Scott was unable to locate any such detail in Plaintiff's records.  Plaintiff alleges that Defendant Scott assigned Plaintiff an upper bunk despite knowing that he was prone to diabetic seizures.

Six months later, on January 27, 2014, Plaintiff fell out of his upper bunk in the middle of the night.  Plaintiff woke up on the floor of his cell, and his face was covered in blood.  Plaintiff's cellmate pushed the emergency button to alert prison officials that Plaintiff needed medical assistance.  Defendant Brinkman responded to the emergency button and found Plaintiff sitting on the floor of his cell.

Instead of medical staff coming to Plaintiff's cell, Plaintiff was forced to go to the control center to see a nurse.  Defendant Brinkman proceeded to help Plaintiff standup and get dressed.  In order to reach the control center, Defendant Brinkman and Plaintiff had to go outside and cross the yard to reach the facility.  Unfortunately, on this date, there was a massive blizzard.  In his deposition, Plaintiff characterized this day as the "worst" day of the year.  The snowy conditions were so bad that M-28 was completely closed.  Due to the snowy conditions, Plaintiff could not use a wheelchair to cross the yard.  Defendant Brinkman helped Plaintiff walk across the yard to the control center.

When they reached the control center, Defendant Brinkman helped Plaintiff into a room and went to go find the nurse on duty that night—Defendant Zelenak.  Shortly thereafter, Defendant Brinkman returned to the room with Defendant Zelenak, and Defendant Zelenak proceeded to examine Plaintiff.  During the examination, Defendant Zelenak had Plaintiff lay on his side while Defendant Brinkman stabilized Plaintiff's head.  Plaintiff alleges that Defendant Zelenak then pulled down Plaintiff's pants.  After the fact, Plaintiff alleges that Defendant Zelenak told him that he conducted an anal rape exam.  Plaintiff contends that the unnecessary and non-consensual anal rape exam was both very painful and humiliating.

After the initial examination by Defendant Zelenak, Plaintiff was transferred to Munising Hospital and then to Marquette General Hospital.  As a result of the fall, Plaintiff broke

two vertebrae in his neck, had four fractures in his face, and received several stiches.  Plaintiff also alleges that at some point, a doctor told him that he should have been immobilized and that walking may have caused more damage.

Based on these facts, Plaintiff asserts three claims: (1) Defendant Scott was deliberately indifferent to his serious medical needs when he failed to assign Plaintiff a lower bunk on July 17, 2013; (2) Defendant Brinkman was deliberately indifferent to his serious medical needs when he refused to allow Plaintiff to use a wheelchair to cross the yard; and (3) Defendant Zelenak used excessive force when he conducted a non-consensual anal rape exam of Plaintiff.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there

is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that they are entitled to summary judgment on Plaintiff's claims on the basis of qualified immunity. "A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Plaintiff's first two claims allege that Defendants Scott and Brinkman were deliberately indifferent to his medical needs in violation of the Eighth Amendment. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* To satisfy the subjective component, the plaintiff must show that the defendant had a "degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 835). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

In his first claim, Plaintiff alleges that Defendant Scott was deliberately indifferent to his medical needs when he failed to assign Plaintiff a lower bunk upon arriving at LMF on July 17, 2013. Defendants appear to dispute whether Plaintiff had a sufficiently serious medical issue that meets the objective component of the deliberate indifference test. Plaintiff claims he suffers from diabetes and hypertension, which causes him to have seizures. Defendants contend that Plaintiff might not have diabetes and even if he does, he is not prone to seizures. Plaintiff's medical records show that he has been treated for diabetes, but the records do not contain any indications that Plaintiff suffered from seizures. Although Plaintiff "passed out" while at work on November 14, 2012, his medical records show that he told the nurse that he does not have a history of passing out. PageID.912.

Regardless of whether Plaintiff meets the objective component, Plaintiff fails to satisfy the subjective component of the deliberate indifference test. Upon Plaintiff's arrival at LMF, Defendant Scott reviewed Plaintiff's medical records and found no evidence of a lower bunk

medical detail.  Plaintiff's medical records from 2008 to 2014 have only twice mentioned a lower bunk medical detail.  On January 6, 2009, Plaintiff requested a lower bunk medical detail during a "sick follow-up visit."  PageID.503.  On May 8, 2009, Plaintiff requested a permanent lower bunk medical detail because of his back and shoulder pain.  PageID.527-530.  It does not appear that Plaintiff was issued a permanent lower bunk medical detail on either date.  Although Plaintiff claims that he had a bottom bunk detail from 1997 to 1999, it is unclear whether his medical records would still contain this medical detail because he was released from prison for some period of time before being sent back in 2008.  Even assuming that Defendant Scott noticed the lower bunk medical detail from 1999, it cannot be said that Defendant Scott was deliberately indifferent when failed to honor a non-current, fourteen year old, lower bunk medical detail.

In addition, Plaintiff's medical records do not show that he has suffered any seizures in the past.  Plaintiff contends that he does have a history of seizures and that doctors refused to make notations in his medical records.  However, Defendant Scott could not have known that Plaintiff had suffered from any seizures based on his review of the medical records.  Therefore, in the opinion of the undersigned, Defendants' motion for summary judgment to dismiss Plaintiff's Eighth Amendment claim against Defendant Scott should be granted.

In his second claim, Plaintiff alleges that Defendant Brinkman was deliberately indifferent to his serious medical needs when he refused to allow Plaintiff to cross the yard using a wheelchair.  Similar to his first claim, Plaintiff fails to satisfy the subjective prong of the deliberate indifference test. Defendant Brinkman responded to Plaintiff's cell in the middle of the night and found Plaintiff sitting on the floor.  PageID.300.  Despite having blood on his face, Plaintiff was able to answer questions, stand, and walk.  PageID.300.  Due to blizzard conditions and time of night, Plaintiff had to cross the yard to see a medical professional because there were

no nurses in Plaintiff's unit.  PageID.276.  Although Plaintiff asked for a wheelchair, the blizzard conditions made the use of a wheelchair impractical.  PageID.276.  Thus, Defendant Brinkman helped Plaintiff walk across the yard.  PageID.276.  Moreover, Plaintiff told Defendant Brinkman twice that he was capable of walking.  PageID.300.  Based on these facts, a reasonable trier of fact could at most find that Defendant Brinkman acted negligently.  Although Defendant Brinkman perhaps could have tried harder to have a nurse come to Plaintiff's cell,  Defendant Brinkman's actions show that he was attempting to get Plaintiff the proper medical treatment as quickly as possible given the circumstances.  Therefore, in the opinion of the undersigned, Defendants' motion for summary judgment to dismiss Plaintiff's Eighth Amendment claim against Defendant Brinkman should be granted.

In his third claim, Plaintiff alleges that Defendant Zelenak violated his Eighth Amendment rights when he conducted an unnecessary and non-consensual anal rape exam of Plaintiff.  Defendants argue that Defendant Zelenak never performed a rectal exam on Plaintiff. Defendant Zelenak and Defendant Brinkman deny that a rectal exam took place.  PageID.295, 301. Jason Bonevelle, a corrections officer who helped transport Plaintiff to the hospital the night of the incident, states that he conducted a strip search on Plaintiff but that he did not perform an anal rape exam.  PageID.427.  In addition, multiple individuals—including Defendant Zelenak and Defendant Scott—state that MDOC nurses never perform rectal exams on prisoners; instead, the prisoner is transported to a medical facility for an anal exam when rape is suspected.  On the other hand, Plaintiff testified that Defendant Zelenak conducted an unnecessary anal rape exam. PageID.277-278.  He alleges that the reason that the medical records do not include any notation of an anal rape exam is because this exam occurred in a separate room within the control center.

Based on the evidence, it is apparent that a question of fact remains as to whether Defendant Zelenak performed a rectal exam on Plaintiff.

Defendants also argue that even if Defendant Zelenak performed a rectal exam on Plaintiff, the exam would have been "lawful, proper and appropriate." PageID.237. According to Defendant Zelenak, rectal exams are commonly used to evaluate a patient following a "Level I trauma" to assess spinal cord function. PageID.296. Defendants further point out that the emergency medical records from that night show that an emergency doctor performed a rectal exam on Plaintiff for this very purpose. PageID.261. However, Defendants' argument ignores Plaintiff's allegation that Defendant Zelenak said he performed an "anal rape exam." PageID.277-278. An anal rape exam is presumably different than a rectal exam to assess spinal cord function. Therefore, assuming Defendant Zelenak performed a rectal exam, a question of fact remains as to the type of rectal exam.

Next, the undersigned must determine if Defendant Zelenak's conduct violated clearly established law. However, as discussed above, there are factual disputes as to whether Defendant Zelenak conducted a non-consensual rectal exam and whether the rectal exam was an anal rape exam. Defendant Zelenak's qualified immunity defense turns on these factual determinations. At this point, the undersigned cannot determine whether Defendant Scott violated Plaintiff's clearly-established rights. *See Bletz v. Gribble*, 641 F.3d 743, 749 (6th Cir. 2011) ("[I]f genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper."). Therefore, in the opinion of the undersigned, Defendants' motion for summary judgment to dismiss Plaintiff's Eighth Amendment claim against Defendant Zelenak should be denied.

Accordingly, the undersigned recommends that Defendants' motion for summary judgment (ECF No. 51) be granted in part and denied in part.  Plaintiff's Eighth Amendment claims against Defendants Brinkman and Scott should be dismissed.  Plaintiff's Eighth Amendment claim against Defendant Zelenak remains.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  February 13, 2017

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE